997 So.2d 175 (2008)
John SPIRES, Plaintiff-Appellee
v.
RAYMOND WESTBROOK LOGGING, Defendant-Appellant.
No. 43,690-WCA.
Court of Appeal of Louisiana, Second Circuit.
October 22, 2008.
*176 Lunn, Irion, Salley, Carlisle & Gardner, by J. Martin Lattier, Shreveport, for Appellant.
Lee & Broussard, by Francis C. Broussard, West Monroe, for Appellee.
Before STEWART, PEATROSS and LOLLEY, JJ.
STEWART, J.
Defendant-Appellant, Raymond Westbrook Logging ("R.W.L."), is appealing a judgment from the Office of Workers' Compensation, which awarded Claimant-Appellee, John Spires, temporary total disability benefits from the date disability began and continuing until he was released to return to work, reasonable and necessary medical treatment, related and previously incurred medical bills to be paid pursuant to the fee schedule, a penalty of $6,869.71, and an attorney fee of $7,000 for failure of appellant to have paid for emergency *177 care. For the following reasons, we affirm the portion of the judgment denying R.W.L.'s defense of intoxication and holding that claimant is entitled to workers' compensation wage indemnity and medical benefits, as well as the penalty and attorney fees imposed by the court below for R.W.L.'s failure to pay for Spires's emergency care pursuant to La. R.S. 23:1081(13). Additionally, we remand this order for modification of the portion of the judgment regarding the medical expenses, to declare a separate and distinct pronouncement of each award of medical expenses and modify this judgment to order R.W.L. pay the reimbursement for medical expenses directly to Spires, without the benefit of the fee schedule, together with legal interest in accordance with the law. Finally, we award additional attorney fees to Spires in the amount of $2,000.00, for representation in this appeal.

FACTS
On October 26, 2005, John Spires was injured while working as a log cutter for his employer, R.W.L., when he crawled under a tree that had partially fallen and was still attached to the stump. The tree fell on him, crushing his pelvis. Spires was taken to the hospital, where drug tests were conducted. The medical records from Citizens Medical Center/Lab Corp and LSU Health Sciences Center-Shreveport establish that the claimant tested positive for marijuana, amphetamines, and opiates on the date of the accident.
Spires filed a claim for workers' compensation. R.W.L. answered the claim alleging the claimant was intoxicated at the time of the accident and precluded from receiving workers' compensation.
Workers' Compensation Judge Brenza Irving ("W.C.J.") orally ruled in favor of Spires, after finding the drug tests performed did not meet the requirements of La. R.S. 23:1081(9)(e), which provides:
(9) All sample of collection and testing for drugs under this Chapter shall be performed in accordance with rules and regulations adopted by the director which ensure the following:
(e) Sample testing shall conform to scientifically accepted analytical methods and procedures. Testing shall include verification or confirmation of any positive test result by gas chromatography, gas chromatography-mass spectroscopy, or other comparably reliable analytical method, before the result of any test may be used as a basis for any disqualification pursuant to this Section. Test results which do not exclude the possibility of passive inhalation of marijuana may not be used as a basis for disqualification under this Chapter. However, test results which indicate that the concentration of total urinary cannabinoids as determined by immunoassay equals or exceeds fifty nanograms/ml shall exclude the possibility of passive inhalation.
The W.C.J. mentioned several reasons for her judgment, including: (1) the testimony of Spires's direct employer that Spires appeared completely normal, with no slurred speech, staggering or any other signs of drug intoxication shortly before this accident; (2) the undisputed fact that Spires cut down over 30 large trees that morning before the accident, which the W.C.J. did not believe was an indication that Spires had some impairment; (3) the drug tests did not meet statutory requirements; and (4) this accident was unavoidable.
Spires was awarded temporary total disability benefits from the date disability *178 began and continuing until he was released to return to work, reasonable and necessary medical treatment, related and previously incurred medical bills to be paid pursuant to the fee schedule, a penalty of $6,869.71, and an attorney fee of $7,000 for R.W.L.'s failure to pay Spires's emergency care. On March 3, 2008, the judgment was filed and signed. Soon thereafter, Spires filed a motion for a new trial, which was subsequently denied. R.W.L. now appeals.

LAW AND DISCUSSION

R.W.L.'s Appeal:
R.W.L. argues that the W.C.J. erred in finding that Spires's requested recovery of worker's compensation benefits was not barred by the intoxication/impairment defense asserted by appellant. More specifically, R.W.L. asserts that the toxicology reports satisfy the requirements of La. R.S. 23:1081(9)(e), supra, so as to create a presumption of intoxication.
A W.C.J.'s findings are subject to the same standard of review, manifest error, as the trial court's. Alexander v. Pellerin Marble and Granite, 93-1698 (La. 1/14/94), 630 So.2d 706. Under this standard, the reviewing court does not ask whether the factfinder is right or wrong, but whether its conclusion was reasonable. Stobart v. State through Department of Transp. and Development, 617 So.2d 880 (La.1993).
In order for the plaintiff to receive workers' compensation benefits, he must establish by a preponderance of the evidence, "personal injury by accident arising out of and in the course of his employment." La. R.S. 23:1031(A). In this case, it is undisputed that the plaintiff was injured by an accident during the course of his employment.
However, La. R.S. 23:1081(1)(b) provides a defense to employer liability for workers' compensation benefits where an employee, working under the influence of drugs or alcohol, is injured and the injury can be attributed to the employee's intoxication. Deal v. Bancroft Bag, Inc., 28,188 (La.App. 2 Cir. 4/3/96), 671 So.2d 1264. If there was, at the time of the accident, evidence of either on or off the job use of a nonprescribed controlled substance, it shall be presumed that the employee was intoxicated. La. R.S. 23:1081(5).
To determine if intoxication contributed to a workplace injury, an employer has the right to administer drug and alcohol testing or demand that the employee submit himself to such testing immediately after a job-related accident. La. R.S. 23:1081(7)(a). The collection, handling and testing process must be trustworthy. Deal, supra. In such cases and in order to support a finding of intoxication, an employer need only prove the use of such drugs by the employee by a preponderance of the evidence. La. R.S. 23:1081(8).
Once such employer has satisfied its burden of proving intoxication at the time of the accident, a presumption of causation due to the intoxication arises. La. R.S. 23:1081(2). The burden of proof is then placed upon the employee to prove that the intoxication was not a contributing cause of the accident in order to defeat the intoxication defense of the employer. La. R.S. 23:1081(12).
It is clear from the language of the above statute that two presumptions apply in these cases. First, evidence of use of a non-prescribed controlled substance creates a presumption that the employee was intoxicated at the time of the accident. The Shaw Group v. Kulick, XXXX-XXXX (La. App. 1 Cir. 4/8/05), 915 So.2d 796. The employer has the burden of proof in this instance, and must carry his burden of proving the employee's drug use by a preponderance *179 of the evidence. Williams v. Coca-Cola Company, 94, 810 (La.App. 3 Cir. 5/12/95), 652 So.2d 108. Once the employer has proven that the employee was intoxicated, the second presumption arises, that such intoxication caused the accident. At that point, the burden of proof shifts to the employee to prove by a preponderance of the evidence that the intoxication was not a contributing cause of the accident. Id. If he does so, the intoxication defense of the employer is defeated. Johnson v. EnviroBlast, XXXX-XXXX (La. App. 1 Cir. 12/28/01), 804 So.2d 924.
R.W.L. urges that it presented ample evidence to establish that the drug tests in question from Citizens Medical Center/Lab Corp and LSU Health Sciences Center in Shreveport were valid. For that reason, R.W.L. argues that a presumption of intoxication/impairment should have been found applicable.
The toxicology report performed at Citizen's Medical Center/Lab Corp shows a positive result for Cannabinoid, but only to the extent that it is greater than 10 nanograms/ml. La. R.S. 23:1081(9)(e) requires at least 50 nanograms/ml to exclude the possibility of passive inhalation. The report revealed negative results for THC. The test showed positive results for Carboxy THC at 53 nanograms/ml, but this is the nonpsychoactive metabolite of THC that can be found in the system days after marijuana is smoked. Even though this result was confirmed by gas chromatography or gas chromatography-mass spectroscopy, Carboxy THC is not an indicator of intoxication.
The toxicology tests performed at LSU Health Sciences Center in Shreveport indicates a positive result for amphetamines and cannabinoids at a cutoff of 50 nanograms/ml. Although there was testimony that the standard technology for quantification is the gas chromatography or gas chromatography-mass spectroscopy, there is nothing on the report that indicates that either a gas chromatography or gas chromatography-mass spectroscopy was done. Additionally, the form specifically states that the results are "preliminary screening test results to be used as a guide in patient management only .... should a confirmed analytical result be required, a more specific alternate chemical method (e.g. Gas Chromotography/Mass Spectrometry) must be used....." Contrary to R.W.L.'s assertion, we cannot find any testimony in the record that verifies or confirms these results as required by La. R.S. 23:1081(9)(e).
After reviewing the evidence presented, the W.C.J. found that both sets of results taken from the toxicology tests performed at Citizen's Medical Center/Lab Corp and LSU Health Sciences Center in Shreveport failed to meet the requirements of La. R.S. 23:1081(9)(e):
"... There is no verification or confirmation of any positive test by gas chromatography or gas chromatographymass spectroscopy, or other reliable analytical methods. There's absolutely no certification attached to it whatsoever."
After studying the reports and arguments of counsel, we must agree that the results at both Citizen's Medical Center/Lab Corp and LSU Health Sciences Center-Shreveport were not verified or confirmed pursuant to the statute.
Additionally, R.W.L. argues that the trial court erred in finding that the intoxication was not a contributing cause of the accident via the conclusion that the accident was unavoidable. R.W.L. asserts that Spires could have gotten around the tree using alternative means, such as walking in another area in order to avoid "crawling under the tree." The W.C.J. recognized that the accident was unavoidable, noting that Spires could not tell how *180 deeply the saw cut through the tree. We cannot say that the W.C.J. was manifestly erroneous in this determination. Therefore, this argument is without merit.

Spires's Answer to Appeal
Spires raises four assignments of error in his answer to the appeal, three of which relate to the payment of the medical expenses. In his first assignment of error, Spires argues that each of his unpaid medical expenses claimed by him against R.W.L. were required to be itemized as separate and distinct elements of the judgment.
To support this assignment, Spires asserts that all of the past due medical expenses owed to him were cumulated in a single petition, but each remained a separate and distinct claim or cause of action that should have been separately adjudicated and pronounced in the judgment. Spires further argues that the lack of specificity makes the judgment ambiguous insofar as the calculation of the judicial interest that is due. Spires contends that the judgment rendered by the W.C.J., declaring that he is entitled to have Raymond pay "any outstanding medical expenses" that are past due at the time of judgment, is not a "definitive judgment." He declares that the judgment must be more specific, suggesting that each particular medical payment found to be due must be specified in order to render a precise, definite and certain judgment that would facilitate the calculation of judicial interest in this case.
Louisiana Revised Statute 23:1203(A) provides in part:
A. In every case coming under this Chapter, the employer shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal, and shall utilize such state, federal, public, or private facilities as will provide the injured employee with such necessary services.
Louisiana Revised Statute 23:1201(F) provides in part:
F. Failure to provide payment in accordance with this Section .... shall result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid or such consent is withheld, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim....
The supreme court affirmed the appellate court's decision in Fontenot v. Reddell Vidrine Water Dist., XXXX-XXXX (La.App. 3 Cir. 1/9/02), 815 So.2d 895, which allowed multiple penalties under Louisiana Revised Statute 23:1201(F) for multiple violations regarding the payment of compensation and medical benefit claims. See Fontenot v. Reddell Vidrine Water Dist., XXXX-XXXX (La.1/14/03), 836 So.2d 14. In the instant case, each individual medical expense is a potential claim.
Louisiana Revised Statute 23:1201.3(A) provides in part:
A. .... Any compensation awarded and all payments thereof directed to be made by order of the workers' compensation judge shall bear judicial interest from the date compensation was due to the date of satisfaction.
*181 The medical expenses from LSU Health Sciences Center-Shreveport, Caldwell Memorial Hospital, Citizen's Medical Center/Lab Corp, and Rapides General Hospital were incurred on different dates. Therefore the judicial interest on each claim begins accruing on a different date. The medical expenses must be specifically ordered so that interest can be correctly calculated. For this reason, we order the modification of the portion of the judgment regarding the medical expenses, to declare a separate and distinct pronouncement of each award of medical expenses.
In his second assignment of error, Spires asserts that the W.C.J. erred in providing in its judgment that R.W.L. was entitled to pay the medical expenses it had previously refused to pay before the judgment directly to the healthcare providers, rather than to Spires who had become personally obligated to pay them. Spires contends that we should modify the judgment to require R.W.L. to pay directly to him the actual amounts of each of the medical bills, together with legal interest from the date each such bill became due pursuant to La. R.S. 23:1203(A).
In a workers' compensation action, a claimant proves entitlement to reimbursement for incurred medical expenses by proving the amount of the expenses and that they were reasonably necessary for treatment of a medical condition caused by the work injury. Gros v. Gaudin, 02-309 (La.App. 5 Cir. 10/16/02), 831 So.2d 304. Following that, the burden shifts to the employer or his insurer, to establish a defense to payment of the incurred medical expenses. Gros, supra.
Under La. R.S. 23:1212, the employer may meet this burden by proving that the expenses were already paid by someone other than the employee, a relative or friend. The employer must judicially assert his right to a credit and present evidence to support his entitlement. Sears v. Berg Inc., 99-457 (La.App. 3rd Cir.9/28/99), 742 So.2d 760.
La. R.S. 23:1212 provides:
A. Except as provided in Subsection B, payment by any person or entity, other than a direct payment by an employee, a relative or friend of the employee, or by Medicaid or other state medical assistance programs of medical expenses that are owed under this Chapter, shall extinguish the claim against the employer or insurer for those medical expenses. This Section shall not be regarded as a violation of R.S. 23:1163. If the employee or the employee's spouse actually pays premiums for health insurance, either as direct payments or as itemized deductions from their salaries, then this offset will only apply in the same percentage, if any, that the employer of the employee or the employer of his spouse paid the health insurance premiums.
B. Payments by Medicaid or other state medical assistance programs shall not extinguish these claims and any payments made by such entities shall be subject to recovery by the state against the employer or insurer.
In the instant case, R.W.L. did not make any such allegations. Spires presented evidence of the incurred medical expenses at trial. R.W.L. neither disputed Spires's evidence nor offered any evidence to establish defense to payment.
We find that the W.C.J. erred in ordering that the reimbursement for medical expenses be paid directly to the medical providers rather than Spires. Accordingly, we order that this judgment be modified, *182 ordering R.W.L. pay the reimbursement for medical expenses directly to Spires.
In his third assignment of error, Spires argues that the W.C.J. erred in reducing the outstanding medical expenses to the costs of medical expenses under the fee schedule that would have been applicable had the defendant paid the expenses without asserting the intoxication defense as a bar thereto. He requests that the judgment declare that R.W.L. is not entitled to a reduction of the medical expenses to the level that would have been charged under the fee schedule had it timely paid those medical expenses to the healthcare providers as limited by La. R.S. 23:1203(B).
When an employer denies the claim from the beginning, it must pay the actual medical expenses incurred and cannot avail itself of the fee schedule. Louviere v. Food & Fun, Inc., 06-469 (La.App. 3d Cir.10/11/06), 941 So.2d 155; Smith v. Roy O. Martin Lumber Co., 03-1441 (La. App. 3 Cir. 4/14/04), 871 So.2d 661, writ denied, 04-1311 (La.9/24/04), 882 So.2d 1144. This is because claimant is then forced to fund the costs of medical treatment himself and because, if the employer denies the claim from the outset, it has no right to pre-approve any treatment. La. R.S. 23:1142(E); Smith v. Roy O. Martin Lumber Co., supra.
Since R.W.L. denied the claim from the onset, Spires has been forced to fund the cost of medical treatment himself. R.W.L. has continuously denied its liability, making it liable for the actual medical expenses incurred by Spires. For these reasons, we find that R.W.L. is not entitled to avail itself of the fee schedule and must pay the actual medical expense incurred by Spires.
In his final assignment, Spires argues entitlement to additional attorney fees for representation in this appeal.
A workers' compensation claimant who timely answers his appeal is entitled to increased attorney fees and penalties to reflect additional time incurred in defending against an employer/insurer's unsuccessful appeal, especially where the claimant makes a clear showing of the employer's arbitrary and capricious refusal to pay the claim. Lachney v. Fertitta Excavating Contractor, 07-885 (La.App. 5 Cir. 4/15/08), 984 So.2d 887.
After reviewing this case in its entirety, we find that R.W.L. did display an arbitrary and capricious refusal to pay the fees associated with the emergency care pursuant to La. R.S. 23:1081(13).
La. R.S. 23:1081(13) provides:
(13) In the event that a health care provider delivers emergency care for to an injured worker later presumed or found to be intoxicated under this Section, the employer shall be responsible for the reasonable medical care provided the worker until such time he is stabilized and ready for discharge from the acute care facility, at which time the employer's responsibility shall end for medical and compensation benefits.
This statute clearly imposed responsibility upon R.W.L. for Spires's reasonable medical care until he was stabilized from the accident. Due to the fact that R.W.L. failed to do so, we grant Spires's request for additional attorney fees in the amount of $2,000.00.

CONCLUSION
For the foregoing reasons, we affirm the portion of the judgment denying R.W.L.'s defense of intoxication and holding that *183 claimant is entitled to workers' compensation wage indemnity and medical benefits, as well as the penalty and attorney fees imposed by the court below for R.W.L.'s failure to pay for Spires's emergency care pursuant to La. R.S. 23:1081(13). Additionally, we remand this order for modification of the portion of the judgment regarding the medical expenses, to declare a separate and distinct pronouncement of each award of medical expenses and modify this judgment to order R.W.L. pay the reimbursement for medical expenses directly to Spires, without the benefit of the fee schedule, together with legal interest in accordance with the law. Finally, we award additional attorney fees to Spires in the amount of $2,000.00, for representation in this appeal.
AFFIRMED IN PART, MODIFIED IN PART, REMANDED.