670 So.2d 388 (1996)
Rosemary JOHNSON, Plaintiff-Appellant-Appellee,
v.
TEMPLE-INLAND and Highlands Insurance Company, Defendants-Appellees-Appellants.
No. 95-948.
Court of Appeal of Louisiana, Third Circuit.
January 31, 1996.
Writ Denied April 19, 1996.
*389 Larry B. Minton, Alexandria, for Rosemary Johnson.
Charles V. Musso Jr., Lake Charles, for Temple-Inland and Highland Insurance Co.
*390 Before DOUCET, Chief Judge, and KNOLL and DECUIR, JJ.
KNOLL, Judge.
This is a worker's compensation case. The hearing officer found that the claimant, Rosemary Johnson, was entitled to benefits from her employer, Temple-Inland, until October 4, 1994, for temporary total disability and awarded weekly indemnity benefits of $181.55 per week. The hearing officer further found Temple-Inland and its insurer, Highlands Insurance Company, arbitrary and capricious for terminating benefits after November 1993, and awarded the claimant penalties on all past due sums and attorney's fees in the amount of $2,000.
The claimant appeals, contending that the hearing officer erred in finding that she was no longer disabled after October 4, 1994. Temple-Inland and Highlands answered the appeal, arguing that the hearing officer erred in finding that the claimant was entitled to worker's compensation benefits through October 4, 1994, and in finding them arbitrary and capricious in terminating worker's compensation benefits.

FACTS
The hearing officer provided detailed written reasons for judgment which provide the factual background to this litigation. We adopt the hearing officer's factual recitation of the facts as follows:
Rosemary Johnson was injured on October 1, 1992, during the course of her employment with Temple-Inland, when she tried to push a cart filled with lumber, not realizing the cart's wheel was broken. After being seen by the company general practitioner, [Dr. R.L. Sasser, Jr.], and an orthopedic evaluation by Dr. James Perry, she was released to light duty work. She returned to work with the employer until she was terminated approximately 3 weeks later due to excessive absenteeism. She began treatment with Dr. Stuart Phillips, and indemnity and medical benefits were paid through December 5, 1993, at which time her indemnity benefits were terminated. The employer has also denied a discogram recommended by Dr. Phillips.
* * * * * *
After the October 1, 1992 accident, Ms. Johnson was referred by the company to Dr. R.L. Sasser, Jr., a general practitioner. Dr. Sasser diagnosed a cervical and lumbar spraining type injury, and he saw her again on October 12, 16, 20, 27 and 30. Ms. Johnson was then referred to an orthopedist of the employer's choice, Dr. James Perry. After an examination on November 2, 1992, Dr. Perry also diagnosed a cervical and lumbar spraining-type injury and recommended light duty work and physical therapy. Ms. Johnson returned to work at a modified position and underwent 10 physical therapy sessions during the month of November. On or about November 23 Ms. Johnson was terminated from her employment with the defendant due to excessive absenteeism. The evidence established to the [hearing officer's] satisfaction that Ms. Johnson had been suspended for absenteeism prior to her work injury and that the termination was in compliance with company policy.
After her termination, Ms. Johnson retained counsel. Ms. Johnson testified that counsel referred her to Dr. Stuart Phillips, an orthopedic surgeon in New Orleans. After an initial examination of January 15, 1993, Dr. Phillips recommended a CT and MRI of the lumbar spine and assessed Ms. Johnson at temporary total disability status... His diagnosis was a lumbar herniated nucleus pulposus ... Temporary total disability benefits were instituted and apparently made retroactive to her termination from work.
In his April 15, 1993 office visit note, Dr. Phillips suggested 6 weeks of physical therapy. The course of physical therapy was authorized. As of June 23, the physical therapist reported:
At the time of her last visit Mrs. Johnson indicated to me that she felt at least 75% better than she did at the initiation of treatment. Mrs. Johnson's mobility was good. She had no guarding of motion. She had good range of motion in the lumbar spine. She continued to *391 have some intermittent pain in the lower back and lower extremity. The pain was primarily in the lower back. Mrs. Johnson was able to go up and down 30 flights of stairs. She was walking on a balance beam anteriairally at least 30 times. She was working on upper extremity isokinetics for strengthening and upper extremity ergometer. She was continuing to do flexibility exercises.
Mrs. Johnson has done well with rehabilitation. She has had decreasing symptoms with increasing activity. She seems to have responded well with her rehabilitation to date....
Dr. Phillips prescribed another 6 weeks of therapy. Records pertaining to those 6 weeks are not in evidence, but following that course, Dr. Phillips noted that no relief was provided, and recommended a discogram and facet joint blocks to determine the advisability of surgery. Mrs. Johnson saw Dr. Perry again at the employer's request.
The results of Dr. Perry's physical examination were essentially normal and he noted that her pain drawing was "totally inappropriate", she demonstrated nonorganic signs of superficial nonanatomic tenderness, regional weakness and over-reaction. He did not feel Ms. Johnson would benefit from further diagnostic studies or surgical treatment, and felt she should be assigned a permanent partial impairment and allowed to return to light or sedentary type work.
Weekly benefits were terminated as of the end of November, 1993. The adjuster handling the file at the time of trial was not handling the file at the time of the termination of benefits, and found nothing in the claims file explaining why the termination had occurred. She assumed that weekly benefits were terminated partially based upon Dr. Perry's report.
Based upon the conflict in opinion in the need for further testing and disability status, and pursuant to LSA-R.S. 23:1124.1, the [hearing officer] appointed Dr. James R. Lafleur as independent medical examiner. Dr. Lafleur found the physical examination to be completely within normal limits with no objective signs of pathology. He did, however, recommend current plain X rays of the cervical and lumbar areas as well ... [as] a pelvic X ray and a cervical and lumbar MRI. Those tests were performed and were found by Dr. Lafleur to be within normal limits with the exception of some degenerative changes at L4-5. Based on the results of the studies and of the physical exam, Dr. Lafleur was of the opinion that Ms. Johnson could return to her pre-injury work status.
In making its determination that Ms. Johnson was entitled to worker's compensation benefits until October 14, 1994, the hearing officer stated that in addition to her observation of Ms. Johnson at the hearing, she relied heavily on the report of Dr. Lafleur to resolve the disagreement between Dr. Perry, the employer's choice of physicians/orthopedists, and Dr. Phillips, Ms. Johnson's choice of treating physicians/orthopedists.

APPOINTMENT OF DR. LAFLEUR
Ms. Johnson first contends that the hearing officer improperly appointed an independent medical examiner. She argues that the hearing officer erred in resolving the dispute in medical evidence by referring to La.R.S. 23:1124.1. Instead, she argues that the hearing officer, utilizing La.R.S. 23:1123, should have asked the director of the OWC to appoint an independent medical examiner.
La.R.S. 23:1123 provides:
If any dispute arises as to the condition of the employee, the director, upon application of any party, shall order an examination of the employee to be made by a medical practitioner selected and appointed by the director. The medical examiner shall report his conclusions from the examination to the director and to the parties and such report shall be prima facie evidence of the facts therein stated in any subsequent proceedings under this Chapter.
La.R.S. 23:1124.1 provides:
Neither the claimant nor the respondent in hearing before the hearing officer shall be permitted to introduce the testimony of *392 more than two physicians where the evidence of any additional physician would be cumulative testimony. However, the hearing officer, on his own motion, may order that any claimant appearing before it be examined by other physicians.
Ms. Johnson characterizes the medical dispute as one involving the question of whether additional medical testing in the form of a discogram and facet joint blocks should be performed. She then refers to the historical and statutory notes to La.R.S. 23:1124.1 which state, in pertinent part:
All claims for any compensation or benefits arising from injuries that occur on or after July 1, 1989, other than disputes over the necessity, advisability or cost of medical treatment, shall be heard and resolved according to the procedures provided for in this act.
Having characterized the dispute as one pertaining to the necessity or advisability of medical treatment, a dispute purportedly not within the ambit of La.R.S. 23:1124.1, she argues that the hearing officer exceeded her authority by appointing Dr. Lafleur as an IME. Ms. Johnson contends that pursuant to La.R.S. 23:1123 only the OWC director, not the hearing officer, had the statutory authority to appoint an independent medical examiner. We disagree.
In early 1993, Dr. Phillips diagnosed a lumbar herniated disc at L4-5 after reviewing a CT scan of the lumbar spine and classified Ms. Johnson as temporarily totally disabled. To the contrary, after reviewing diagnostic studies in late 1993, Dr. Perry concluded that Ms. Johnson's pain was totally inappropriate, that she had nonorganic signs of superficial nonanatomic tenderness, as well as "regional weakness, over-reaction." Although Dr. Perry found that Ms. Johnson had a pre-existing spinal anomaly unrelated to the work-accident, he did not find that she had a lumbar herniated disc at L4-5. Instead, he stated that she could return to light duty work.
After reviewing the record, we find that Ms. Johnson's characterization of the medical dispute is unduly restrictive. The evidence shows that Dr. Perry's diagnosis of Ms. Johnson's underlying medical problem significantly differed from that suggested by Dr. Phillips. Accordingly, we find that the hearing officer was presented with more than a disagreement over the appropriateness of the discogram and facet joint blocks. More significantly, the hearing officer faced diametrically opposing medical opinions on Ms. Johnson's condition.
Clearly, under this factual presentation, the hearing officer had the authority under La.R.S. 23:1124.1 to appoint an independent medical examiner to help reconcile these differences. Therefore, we find no merit to Ms. Johnson's assignment of error.

DISABILITY DETERMINATION
Ms. Johnson contends that the hearing officer incorrectly determined that she was not temporarily totally disabled after October 4, 1994, the date of Dr. Lafleur's medical opinion. On the other hand, Temple-Inland and Highlands contend that the hearing officer erred in awarding temporary total disability benefits until October 4, 1994. Because of the interrelatedness of these assignments of error, we will address the parties' contention together.
An employee is entitled to receive temporary total disability benefits only if he proves that he "is physically unable to engage in any employment or self-employment." La.R.S. 23:1221(1)(c). Effective January 1, 1990, a claimant must prove a disability that renders him unable to work by clear and convincing evidence. Belaire v. L & L Oil Co., 93-1198 (La.App. 3 Cir. 5/4/94); 636 So.2d 1177. The clear and convincing standard is a heavier burden of proof than the usual civil preponderance of the evidence standard but less burdensome than the beyond a reasonable doubt standard of criminal law. Bundren v. Affiliated Nursing Homes, Inc., 94-808 (La.App. 3 Cir. 2/1/95); 649 So.2d 1177. To prove a matter by clear and convincing evidence means to demonstrate that the existence of a disputed fact is highly probable; that is, much more probable than its nonexistence. Id.
It is well settled that the standard of review of a hearing officer's conclusions is the manifest error/clearly wrong standard. Belaire, *393 636 So.2d 1177. That standard of review is set forth by our Supreme Court in Rosell v. ESCO, 549 So.2d 840 (La.1989), and Stobart v. State, Through Dept. Of Transp. and Development, 617 So.2d 880 (La.1993).
Before we address the issues presented under these assignments of error, we find a need to preface our remarks with comments on several items mentioned in the hearing officer's written reasons. We will also comment on a line of argument presented in the brief of Temple-Inland and Highlands.
In the case sub judice, the hearing officer acknowledged in her written reasons for judgment that the testimony of a claimant's treating physician should ordinarily be afforded more weight than that of an examining physician. See Nugent v. Continental Cas. Co., 93-867 (La.App. 3 Cir. 3/2/94); 634 So.2d 406. Following that line of jurisprudence, the hearing officer stated various reasons that prompted her to discount the testimony of Dr. Phillips, Ms. Johnson's treating physician. Included among her reasons were the following: (1) Ms. Johnson's attorney referred her to Dr. Phillips for treatment; (2) Ms. Johnson traveled to New Orleans for treatment even though she lived in DeRidder, Louisiana, a round-trip distance of approximately 500 miles; and (3) Dr. Phillips denied that the use of discograms as a diagnostic tool was controversial.
Based upon the record before us, we find that the hearing officer improperly discounted the opinion of Dr. Phillips for the reasons just enumerated. First, the Louisiana Worker's Compensation Law does not prohibit an attorney from referring his client to a treating physician. Second, under La.R.S. 23:1121 the employee has the right to select one treating physician in any field or specialty; no requirement is made in that statute than the employee select the physician who is located closest to his home. Third, the record is void of evidence that refutes Dr. Phillips's statement that the American Academy of Orthopaedic Surgeons and the North American Spine Society approve of discography as an appropriate manner to image a disc. Accordingly, we find that these references were improperly considered by the hearing officer in discounting Dr. Phillips's medical opinion.
On the other hand, we find ourselves likewise compelled to comment on the gratuitous commentary of Temple-Inland and Highlands in their appellate brief regarding their estimation of Dr. Phillips as being liberal and not worthy of belief. It is axiomatic that in the examination of issues a reviewing court confines itself to evidence entered at the trial level. Those matters not entered into evidence in the trial court and set out for the first time in brief are extraneous to the assessment of the issues presented and are not considered. Accordingly, we find Temple-Inland and Highland's string citation of case references to Dr. Phillips's treatment in other cases irrelevant to our assessment of the hearing officer's actions in the case at hand.
Having addressed these preliminary issues, we now turn our attention to the question of whether Ms. Johnson proved her entitlement to benefits for temporary total disability. We will first outline the role of the independent medical examiner and then show how that testimony weighs in the final determination of the hearing officer.
As shown hereinabove, the hearing officer was presented with conflicting medical opinions on whether Ms. Johnson suffered from a herniated disc that prohibited her from working. To aid it in the resolution of these issues, the hearing officer appointed an independent medical examiner. The court-appointed expert's opinion must be considered prima facie true. See La.R.S. 23:1123. However, the opinion of the court-appointed expert is not conclusive. Menard v. Winn Dixie Louisiana, Inc., 93-1497 (La.App. 3 Cir. 6/1/94); 640 So.2d 775.
Stated differently, while the law permits the hearing officer to appoint a physician to perform an independent medical examination, it does not require the hearing officer to accept his conclusions. A hearing officer simply does not cede the responsibility afforded her office when she chooses to appoint an independent medical examiner.
In evaluating the evidence, the trier of fact normally should accept as true the uncontradicted testimony of a witness, even if *394 the witness is a party. This is because a finding of disability vel non is a legal rather than a purely medical determination. However, where there is conflicting testimony, the factfinder is to determine claimant's disability after reviewing the totality of the evidence, including both lay and medical testimony.
Menard, 93-1497 (La.App. 3 Cir. 13); 640 So.2d at 783.
Initially, the hearing officer determined that although Dr. Phillips was Ms. Johnson's treating physician, his testimony should not be accorded greater deference than that of the other physicians who testified. After carefully reviewing the record, we find that although the hearing officer made some impermissible findings regarding the weight that should be accorded Dr. Phillips's, we nevertheless conclude that her decision to credit the testimony of Dr. Lafleur was not clearly erroneous. The medical evidence and testimony was clearly in conflict on the issue that was central to this litigation. Thus, the hearing officer was faced with two reasonable and permissible views of the evidence, that espoused by Dr. Phillips and that of Drs. Lafleur, Perry, and Sibile. She chose to believe the latter. In doing so, she made a factual finding based on credibility determinations of Dr. Phillips and Ms. Johnson which, in the absence of manifest error or clear wrongness, cannot be reversed on appeal. Stobart, 617 So.2d 880; Rosell, 549 So.2d 840. In particular, the hearing officer found that Dr. Phillips overstated Ms. Johnson's medical condition as well as her medical prognosis. Likewise, the other physicians who examined Ms. Johnson found that her subjective complaints were incongruent with their objective medical findings. As an appellate court, the jurisprudence restricts us to the inquiry of whether the fact finder's determination was a reasonable one. Stobart, 617 So.2d 880. After thoroughly reviewing the record, we conclude that the hearing officer's decision to favor Dr. Lafleur's medical opinion over that of Dr. Phillips was not manifestly erroneous. Therefore, we find no manifest error in the hearing officer's determination that Ms. Johnson was not suffering from a herniated disc and that she could return to her pre-injury work status.
Notwithstanding this determination, we find that the hearing officer erred in finding that Ms. Johnson proved her entitlement to temporary total disability benefits until October 4, 1994. La.R.S. 23:1221(1) specifies that in order to be eligible for temporary total benefits, the employee must prove by clear and convincing evidence that he is unable to engage in any employment.
The record shows that as early as November of 1993 that Dr. Perry found that Ms. Johnson was able to return at least to light duty work. It is clear that on October 4, 1994, Dr. Lafleur concluded that Ms. Johnson was not suffering from a herniated disc as Dr. Phillips espoused and that she was capable of returning to work. By making this medical determination, Dr. Lafleur confirmed Dr. Perry's earlier medical finding and further removed any basis for reinstating Ms. Johnson to temporary total disability benefits that Temple-Inland and Highlands had re-instituted. Accordingly, we find no basis upon which the hearing officer could have awarded Ms. Johnson continuing benefits to the date of Dr. Lafleur's medical opinion. Therefore, we find no reasonable basis for the hearing officer's award of temporary total benefits to that date and reverse its determination in this regard.

PENALTIES AND ATTORNEY'S FEES
Temple-Inland and Highlands next contend that the hearing officer erred in finding it arbitrary and capricious. We agree.
The jurisprudence is firmly established that if a claimant fails to prove his disability by the appropriate standard of proof, and therefore is not entitled to disability benefits, defendants cannot be arbitrary and capricious in refusing to pay benefits. Harris v. Vermilion Farmers Co-Op, Inc., 610 So.2d 1052 (La.App. 3 Cir.1992). Accordingly, since we find that Ms. Johnson failed to establish by clear and convincing evidence that she was disabled, we reverse the order of the hearing officer in which it awarded penalties and attorney's fees.
*395 For the foregoing reasons, we reverse the hearing officer's judgment which found Ms. Johnson disabled until October 14, 1994, and in awarding penalties and attorney's fees. Costs of the Office of Worker's Compensation and this appeal are assessed to Ms. Johnson.
REVERSED AND RENDERED.