935 So.2d 336 (2006)
Hubert BATTLE, Plaintiff-Appellee
v.
PILGRIM'S PRIDE CORPORATION, Defendant-Appellant.
No. 41,056-WCA.
Court of Appeal of Louisiana, Second Circuit.
June 28, 2006.
*339 Huval, Veazey, Felder & Aertker, by Dona K. Renegar, for Appellant.
Jeansonne & Remondet, by Peter B. Derouen, Street & Street, by C. Daniel Street, Monroe, for Appellee.
Before BROWN, STEWART and PEATROSS, JJ.
STEWART, J.
Pilgrim's Pride Corporation ("Pilgrim's Pride") appeals the decision of the Workers' Compensation Judge (WCJ) awarding benefits to Hubert Battle. Finding no error in the decision of the WCJ, we affirm.

FACTS
On October 31, 2003, Hubert Battle was working as a floor man at Pilgrim's Pride when a pallet of containers fell on him injuring his back. He sought treatment from Dr. Wyatt Webb who removed him from work immediately. Pilgrim's Pride began the payment of indemnity benefits. Dr. Webb referred Battle to Dr. Timothy Spires, an orthopedist, for further treatment. Battle testified that he felt better while getting the therapy, but his problems did not resolve as he continued to suffer from constant pain from his back and waist area to his feet on both sides from the time of the accident to the time of trial. Battle was under the care of Dr. Spires until January 2004 when Dr. Spires released him to the care of a neurosurgeon at Battle's request. Battle was next seen by a neurosurgeon of Pilgrim's Pride's choosing, Dr. Donald Smith. Dr. Smith examined Battle and determined that he did not need further treatment and could return to work. Dr. Smith's report was forwarded to Dr. Spires who agreed with his findings.
Following receipt of these two opinions, Pilgrim's Pride offered Battle a position at the facility where he previously worked. However, Battle did not return to work, but instead submitted a request to be seen by Dr. Bennie McHugh, a neurosurgeon, and this request was approved. Dr. McHugh performed an MRI which revealed degenerative disc changes of the L3-4 and L4-5 with mild posterior disc bulges or protrusions with a tiny annular rent or tear at L3-4. It also showed that these findings caused mild effacement of the anterior thecal sac more prominent to the right at L4-5 and more prominent to the left at L3-4. Dr. McHugh recommended pain management therapy until Battle could return to work. Doctors Spires and Smith opined that Battle needed no further treatment and should return to work.
Pilgrim's Pride then terminated Battle's indemnity benefits and refused to approve any medical treatment. Trial of this matter was held June 1, 2005, and the parties stipulated to employment, accident in the course and scope of employment, and a workers' compensation rate of $271.54. The WCJ determined that Battle was temporarily totally disabled from August 3, 2004, until his treating physician, Dr. McHugh, declared Battle to be at maximum medical improvement. The Court also found that Battle was entitled to temporary total disability benefits (TTD) of $271.54 per week until Dr. McHugh declares him to be at maximum medical improvement. The court awarded Battle $2,000.00 as a penalty for Pilgrim's Pride's failure to reinstate worker's compensation benefits on August 3, 2004, failure to approve Battle's request to see Dr. McHugh, and failure to approve pain management *340 for the claimant. The court also awarded Battle's attorney $6,000.00. This appeal ensued.

DISCUSSION

Standard of Review
Factual findings in a workers' compensation case are subject to the manifest error or clearly wrong standard of appellate review. Smith v. Louisiana Dep't of Corrections, 93-1305 (La.02/28/94), 633 So.2d 129; Freeman v. Poulan/Weed Eater, 93-1530 (La.01/14/94), 630 So.2d 733. Under the manifest error rule, the reviewing court does not decide whether the factual findings are right or wrong, but whether they are reasonable. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551. If the WCJ's findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse, even if convinced that, had it been sitting as the trier of fact, it would have weighed the evidence differently. Banks, supra; Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993); Graham v. Georgia-Pacific Corporation, 26,165 (La.App. 2d Cir.9/23/94), 643 So.2d 352.
The manifest error standard accords great deference to the WCJ for, as fact finder, he is in the superior position to assess the demeanor and tone of voice that are crucial to the issue of credibility. Rosell v. ESCO, 549 So.2d 840 (La.1989). The WCJ's decision to credit the testimony of one of two or more witnesses can virtually never be plainly wrong. Id. Thus, "if the [factfinder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106, 1112 (La. 1990).

Mediation Testimony
When error is detected, it must be weighed to determine whether such error is harmless or prejudicial. Short v. Gaylord Chem. Corp., (La.App. 3d Cir.04/01/00), 731 So.2d 493. Pilgrim's pride argues that the WCJ erred in allowing Battle's counsel to testify concerning the statements made by claims adjuster, Lisa Vincent, at the mediation of this matter. Apparently, the references to the testimony given during the mediation were given to resolve the issue of whether Battle was timely granted his choice of neurosurgeon. There was also a question of whether Dr. Smith was Battle's choice of neurosurgeon. Of course, the record reveals that it was Dr. McHugh who was Battle's choice of neurosurgeon. Nonetheless, we find no error in the admission of the testimony. It is clear from the reasons for judgment that the WCJ did not rely on the dispute concerning the timeliness of the approval of treatment by Dr. McHugh or whether Battle was given his choice of neurosurgeon as a basis for the judgment at issue. Any admission of this testimony was harmless error. Thus, this assignment is without merit.

Temporary Total Disability Benefits (TTD)
An employee is entitled to receive TTD benefits only if he proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment. Nelson v. City of Grambling, 31,303 (La.App. 2d Cir.12/9/98), 722 So.2d 358; Knotts v. Snelling Temporaries, 27,773 (La.App. 2d Cir.12/6/95), 665 So.2d 657; Johnson v. Temple-Inland, 95-948 (La.App. 3rd *341 Cir.1/31/96), 670 So.2d 388. To prove a matter by clear and convincing evidence means to demonstrate that the existence of a disputed fact is highly probable, that is, much more probable than its nonexistence. Nelson v. City of Grambling, supra; Knotts v. Snelling Temporaries, supra; Johnson v. Temple-Inland, supra.
Since the 1989 amendment to 23:1221(1)(d), maximum medical improvement alone has not been the standard for the termination or eligibility of TTD benefits. Rather, an employee is ineligible for TTD benefits when his physical condition has resolved itself to the point that a "reasonably reliable determination of extent of disability" may be made and "continued, regular treatment by a physician is not required," or six months after the injury, whichever occurs first. Mitchell v. AT & T, 27,290 (La.App. 2d Cir.8/28/95), 660 So.2d 204. However, upon reaching maximum medical improvement ("MMI"), an injured worker who is able to return to work, even in pain, is no longer eligible for TTD benefits, but instead is relegated to SEB. Nelson v. City of Grambling, supra; Foster v. Liberty Rice Mill, 96-438 (La. App. 3rd Cir.12/11/96), 690 So.2d 792.
To qualify for SEB, a plaintiff is required to prove by a preponderance of the evidence that a work related injury resulted in the inability to earn 90% or more of the pre-injury wages. LSA-R.S. 23:1221(3)(a); Nelson v. City of Grambling, supra; Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551. The purpose of SEB is to compensate the injured employee for the wage-earning capacity he has lost as a result of his accident. Nelson v. City of Grambling, supra; Banks v. Industrial Roofing & Sheet Metal Works, Inc., supra.
Under LSA-R.S. 23:1221(3)(a), an employer may preclude SEB by establishing that the employee is physically able to perform a certain job and that the job was offered to the employee, or that the job was available to the employee, in his or the employer's community or reasonable geographic region. Nelson v. City of Grambling, supra; Banks v. Industrial Roofing & Sheet Metal Works, Inc., supra. Once the employer demonstrates the employee is capable of work, and appropriate work is available, then the claimant must prove by clear and convincing evidence, unaided by a presumption of disability, that he is unable to perform the employment offered. The parties stipulated to the occurrence of a work related injury, and Pilgrim's Pride never demonstrated that Battle was capable of returning to work; therefore, it was error to terminate his disability benefits.

Penalties
The employer's failure to provide payment of compensation or medical benefits owed shall result in the assessment of a penalty and reasonable attorney fees, unless the employer has reasonably controverted the claim. La. R.S. 23:1201(F). To reasonably controvert a claim, the employer must have sufficient factual or medical information to reasonably counter the evidence provided by claimant. Lewis v. Chateau D'Arbonne Nurse Care Center, 38,394 (La.App. 2d Cir.4/7/04), 870 So.2d 515; Thomason v. Wal-Mart Stores, Inc., 37,520 (La.App. 2d Cir.9/4/03), 852 So.2d 1283. La. R.S. 23:1121(B) gives an injured employee an absolute right to select one physician in any field without the approval of the employer. Smith v. Southern Holding, Inc., XXXX-XXXX (La.1/28/03), 839 So.2d 5. Selection of a new physician in a different specialty does not require such approval. Thompson v. The Animal Hospital, 39,154 *342 (La.App.2d Cir.12/15/04), 889 So.2d 1193; Davis v. Sheraton Operating Corporation, 1997-2784 (La.App. 4th Cir.5/20/98), 713 So.2d 814.
Statutory provisions permitting the assessment of penalties and attorney fees for nonpayment of workers' compensation benefits are penal in nature and must be strictly construed. Lewis v. Chateau D'Arbonne Nurse Care Center, supra. The WCJ has great discretion in awarding or denying penalties and attorney fees. Thomason v. Wal-Mart Stores, Inc., supra. The WCJ's decision concerning whether or not to assess statutory penalties and attorney fees will not be disturbed absent an abuse of discretion. Lewis v. Chateau D'Arbonne Nurse Care Center, supra.
The WCJ determined an employer may not avoid penalties for arbitrary nonpayment by relying on initial optimistic report if the employer receives subsequent evidence to indicate that the employee has a continuing disability. See Davidson v. Horseshoe Casino, Inc., 31,166 (La.App. 2d Cir.10/28/98), 720 So.2d 785. Consequently, we find no abuse of discretion in the WCJ's decision to award $2,000.00 in penalties because of Pilgrim's Pride's failure to reinstate benefits.

Attorney Fees
La. R.S. 23:1201.2 provided for an assessment of attorney fees when the employer arbitrarily and capriciously discontinued benefits without probable cause. Thomason v. Wal-Mart Stores, Inc., 37,520 (La.App. 2d Cir.9/04/03), 852 So.2d 1283, writ denied, 2003-2774 (La.12/19/03), 861 So.2d 573.
The factors to be considered in the imposition of the attorney fee in workers' compensation cases include the degree of skill and ability exercised by the attorney, the amount of the claim, the amount recovered for the claimant, and the amount of time the attorney devoted to the case. Lewis v. Chateau D'Arbonne Nurse Care Center, supra. There is no requirement that the trial court hear evidence concerning the time spent or the hourly rates charged to make an award of attorney fees since the record will reflect much of the services rendered. Tatum v. St. Patrick's Psychiatric Hospital, 34,957 (La. App. 2d Cir.8/22/01), 794 So.2d 958. The degree of bad faith exhibited by the employer is not an appropriate factor in determining the amount of attorney fees to be awarded. Thompson v. The Animal Hospital, supra.
The amount of attorney fees awarded rests within the discretion of the WCJ, and that determination will not be disturbed absent an abuse of that discretion. McCarroll v. Airport Shuttle, Inc., 00-1123 (La.11/28/00), 773 So.2d 694; Ward v. Phoenix Operating Co., 31,656 (La.App. 2d Cir.2/24/99), 729 So.2d 109. The factors to be considered in determining the amount of the attorney fees include the degree of skill and ability exercised by the attorney, the amount of the claim, the amount recovered for the employee, and the amount of time the attorney devoted to the case. McCarroll, supra; Ward, supra. Counsel for the claimant represented his client well, securing the payment of workers' compensation benefits owed and not paid for almost an entire year.
Although this employer initially paid weekly benefits to Battle, it stopped when it disregarded the report of Battle's treating physician, Dr. McHugh. The WCJ determined that Pilgrim's Pride had reasonable cause to terminate Battle's benefits on March 8, 2004, when it received the report of Dr. Smith, but that the basis for the stoppage of benefits ended on August 3, 2004, when Dr. McHugh recommended pain management and released Battle *343 from work until his pain management evaluation. Given these conflicting reports, Pilgrim's Pride could have reinstated benefits pending further evaluation. Instead it chose to blindly rely on the favorable report of its own physician to the detriment of Mr. Battle. Considering these facts, we cannot conclude that the trial court erred in awarding these penalties and attorney fees for Pilgrim's Pride's failure to pay benefits.

CONCLUSION
Based on the above, we affirm the judgment of the trial court reinstating workers compensation benefits to Hubert Battle and awarding penalties and attorney fees against Pilgrim's Pride. Costs assessed against the appellant.
AFFIRMED.