BROWN, Chief Judge.
 

 11 Claimant, Mark Steven Wilson, filed a workers’ compensation claim against his employer, General Motors Corporation, asserting that he sustained compensable injuries on January 31, 2008, arising out of a physical altercation with a coworker while working at the General Motors plant in Shreveport, Louisiana. General Motors contended that Wilson was the initial aggressor in the altercation and was therefore not entitled to workers’ compensation benefits. Following a hearing, the Workers’ Compensation Judge (“WCJ”) found in favor of Wilson and awarded him indemnity benefits for the period of February 1, 2008, through April 30, 2008, subject to a credit per La. R.S. 23:1225 and reimbursement for medical expenses related to his claim. The WCJ denied Wilson’s request for imposition of penalties and an award of attorney fees. General Motors has appealed from this adverse judgment. We affirm.
 

 Discussion
 

 On appeal, General Motors contends that the WCJ erred in finding: (1) that the incident arose out of and in the course of Wilson’s employment with GM; and (2) that Wilson was not the initial aggressor.
 

 In a workers’ compensation action, the employee must establish that his injury was caused by an accident that arose out of and in the course of his employment. La. R.S. 23:1031(A);
 
 Wells v. Higginbotham,
 
 43,472 (La.App.2d Cir.08/13/08), 989 So.2d 848,
 
 writ denied,
 
 08-2425 (La.12/12/08), 996 So.2d 1121. An injury occurs in the course of employment when it happens during the time of employment and at a time contemplated by employment.
 
 Williams v. Regional Transit Authority,
 
 546 So.2d 150 |2(La.1989);
 
 LaPrarie v. Pony Express Courier,
 
 628 So.2d 192 (La.App. 2 Cir.1993),
 
 writs denied,
 
 94-0014 (La.02/25/94), 632 So.2d 765, 94-0024 (La.02/25/94), 632 So.2d 765. “In the course of’ brings into focus where the employee was and what the employee was doing at the moment of the injury.
 
 Wells, supra.
 
 Wilson was on General Motors’ premises and engaged in the work to which he was assigned. Thus, the incident clearly occurred in the course of Wilson’s employment with General Motors.
 

 The more difficult issue is whether the injury “arose out of’ his employment with General Motors. In
 
 Raybol v. Louisiana State University,
 
 520 So.2d 724 (La.1988), the supreme court held that a strong showing of “in the course of’ may
 
 *605
 
 overcome a weak showing of “arising out of.” The legislature reacted to and limited this ruling by enactment of La. R.S. 23:10S1(E) which provides that an injury by accident should not be considered as having arisen out of the employment and thereby is not covered by the provisions of this Chapter if the employer can establish that the injury arose out of a dispute with another person or employee over matters unrelated to the injured employee’s employment. More succinctly stated, “arising out of’ suggests inquiry into character or origin of risk.
 
 Wells, supra.
 

 The trial court’s determinations as to whether the employee’s testimony is credible and whether the employee has discharged his burden of proof are factual determinations that are not to be disturbed on review unless clearly wrong or manifestly erroneous.
 
 Bruno v. Harbert International, Inc.,
 
 593 So.2d 357 (La.1992);
 
 LaPrarie, supra.
 
 When a ^factfinder’s finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.
 
 Rosell v. ESCO,
 
 549 So.2d 840 (La.1989);
 
 Battle v. Pilgrim’s Pride Corp.,
 
 41,056 (La.App.2d Cir.06/28/06), 935 So.2d 336,
 
 writ denied,
 
 06-1904 (La.10/27/06), 939 So.2d 1288;
 
 LaPrarie, supra.
 
 When there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong.
 
 Fuentes v. Cellxion, Inc.,
 
 44,914 (La.App.2d Cir.12/16/09), 27 So.3d 1045;
 
 Koenig v. Christus Schumpert Health System,
 
 44,244 (La.App.2d Cir.05/13/09), 12 So.3d 1037.
 

 At the hearing, the evidence consisted,
 
 inter alia,
 
 of the testimony of the two men engaged in the altercation, claimant, Mark Wilson, and Edward Burroughs. Also introduced into evidence, over a hearsay objection made by Wilson’s attorney, was an incident report prepared by the investigating deputy sheriff which contains the statements of three witnesses, none of whom testified at trial. The WCJ allowed the report into evidence but noted his intention to give it “due weight” based on the fact that it was hearsay.
 
 See, Chaisson v. Cajun Bag & Supply Co.,
 
 97-1225 (La.03/04/98), 708 So.2d 375;
 
 Odom v. International Paper Co.,
 
 31,826 (La.App.2d Cir.05/05/99), 736 So.2d 290.
 

 Claimant, Mark Wilson, testified that his job involved the installation of steering columns on the assembly line. Edward Burroughs also installed steering columns and the two men shared a general work area. Wilson stated that on the date of the incident, he was working the second (or Levening) shift, which began at 4:00 p.m. When the whistle sounded signaling the beginning of the shift, Burroughs was not yet at his station. Wilson testified that he began installing a steering column, which required him to use an overhead air wrench. As Burroughs ran past Wilson, he “slapped” the cord to Wilson’s air wrench out of the way.
 

 According to Wilson, as Burroughs hit the air wrench, Wilson “rolled his eyes.” Burroughs told Wilson not to roll his eyes, then started “cussing.” Burroughs then went to his station and began installing a steering column. Wilson stated that after he completed installation of his first steering column, to get another column for his next installation, Wilson had to pass by Burroughs. Wilson testified that as he walked past Burroughs, his coworker began cursing at him. While Wilson was at the column table getting the material he needed, Burroughs approached him, got in his face, hit him in the face, and knocked him down. After Wilson fell to the ground, Burroughs jumped on him and hit him again.
 

 
 *606
 
 According to Wilson, he never did anything to provoke Burroughs. Wilson stated that while he may have exchanged words with Burroughs before Burroughs struck him, Wilson made no physical contact with his coworker. Wilson also acknowledged that he and Burroughs had not gotten along prior to this incident. Both men were disciplined by GM for their parts in the incident. Wilson testified that as a result of Burroughs’ assault, he sustained a fractured wrist and a broken facial bone.
 

 Edward Burroughs testified that the initial confrontation occurred when he passed by Mark Wilson at the start of their shift. Burroughs stated |5that he “moved” Wilson’s air wrench cord, but denied that he “slapped” it away. According to Burroughs, the physical altercation was started by Wilson, who bumped him in the chest once or twice as Wilson got his second steering column. Burroughs asked Wilson if he had a problem. Wilson in return asked Burroughs if he had a problem. Burroughs stated that he continued to do his job. Wilson approached him and cursed at him. Burroughs told Wilson to get out of his face. It was then that Wilson bumped him again and said, “What are you going to do?”
 

 Burroughs stated that he felt threatened by Wilson and protected himself by pushing Wilson to the ground. According to Burroughs, he did not hit Wilson until Wilson savagely kicked him as Wilson was lying on the ground. Burroughs stated that he only punched Wilson once in his left eye, and then only in self-defense.
 

 The “arising out of’ analysis focuses on the relationship of the source of the fight to the nature of the employment. In this case, the fight arose at work while claimant was engaged in his assigned duties. Burroughs was late; as he hurried to his station he slapped Wilson’s air wrench cord. They worked in the same area, and Burroughs’ late arrival clearly agitated the situation between the two, which lead to their verbal exchange and the attack.
 
 See Stacy v. Minit Oil Change,
 
 31,985 (La.App.2d Cir.06/16/99), 742 So.2d 929.
 
 [1]
 
 The WCJ correctly found that the altercation arose out of Wilson’s employment.
 

 |fiWe likewise find no manifest error in the WCJ’s conclusion that General Motors failed to prove that Wilson was the initial aggressor. The “initial physical aggressor” defense, which must be proven by the employer, is set forth in La. R.S. 23:1081(l)(c), which provides that no compensation shall be allowed for an injury caused to the initial aggressor in an unprovoked physical altercation, unless excessive force was used in retaliation against the initial aggressor.
 

 The conflicting accounts of Wilson and Burroughs called for a credibility determination by the WCJ which he resolved in favor of claimant. As noted above, the WCJ’s conclusion was reasonable and supported by the evidence and as such, is not clearly wrong.
 

 Conclusion
 

 For the reasons set forth above, the WCJ’s judgment is affirmed. Costs are assessed to defendant-appellant, General Motors Corporation.
 

 [1]
 

 . WCJ gave no written reasons for judgment, but he obviously found claimant to be the more credible witness and chose to give little or no weight to the incident report prepared by the investigating deputy which contained some statements from three witnesses who did not testify at trial.